Good morning. May it please the Court, my name is Hadiya Deshmukh. My partner Sean Patrick McGinley and I are Boston College Law students. We are appearing under the supervision of Kari Hong. We represent Petitioner Claudia Prado. You've come a long way. Yes, it was. Thank you for doing so. Thank you for letting us. This case presents three issues. One, did California enact Prop 64 solely for rehabilitative purposes? Two, does Prop 64 apply retroactively to Ms. Prado's offense, even without rescinding the old plea agreement? And three, does Prop 64 transform Ms. Prado's conviction so that she has a different sentence and also a different crime, which is newly overbroad to the federal definition of marijuana? Can I ask you this? I think you've well stated the general positions, but as you know, of course, our court has some law on this kind of issue. We've had other propositions, other statutes that have purported to change what was a felony into a misdemeanor and so on. And one of the real questions that we deal with is whether the underlying conduct in the case was changed. In other words, was there a material error on the part of the judge below? Was there a fault of evidence? In other words, would it have been overturned in some other way other than, in this case, Prop 64? Is there anything in the records of Ms. Prado that suggests that, other than the effect of Prop 64, that anything changed in connection with her being charged and convicted? Only her redesignation under Prop 64. Okay, so basically we should limit our discussion to, we have to assume that but for Prop 64, nothing would have changed. Is that right? Yes, Your Honor. Okay, thank you. First, California passed Prop 64 because its prior marijuana laws were fundamentally unfair. In the words of Governor Newsom, Prop 64 provides, quote, new hope and opportunities to Californians, primarily people of color, whose lives were long ago derailed by a costly, broken, and racially discriminatory system of marijuana criminalization, unquote. If Ms. Prado had been convicted, and later evidence showed that a racially biased police officer, prosecutor, or juror had tainted the trial, then clearly, post-conviction relief on that basis would fall into Pickering's procedural and substantive defect judgment. So that's what I was asking you before, so we're not talking about that. We're just talking about the effect of Prop 64. For purposes of our discussion, I assume we're going to put aside a racial component. We're going to put aside any problem that occurred in the trial on some constitutional or other issue. We're just talking about, as a result of Prop 64, how did that change the result here under United States immigration laws, right? Correct, Your Honor. Okay. So Pickering looks to the, if there is a substantive defect in her underlying proceedings. Right. And so we look to the substantive defect recognized by Prop 64. And so the substance is in the lot itself. You know, sometimes the people who write these ballot propositions don't think them through. We would have a different case, wouldn't we, if what Prop 64 did was give sentencing judges in the State of California the authority to, at their discretion, to designate any marijuana conviction as a wobbler. And then, if they wish, to exercise their discretion to determine that the offense is a misdemeanor versus a felony. It would be a different case, wouldn't it? Well, Your Honor, that is what Prop 64 does. That is not what it does. It does not tell California sentencing judges that, retroactively and from now and forevermore, these offenses are wobblers. And California judges can determine whether they're a felony or misdemeanor. Your Honor, as raised in our 28J letter, People v. Jones and Taylor, the trial court does retain discretion if finding under subsection C of 11359 whether it meets the felony or misdemeanor, and can decide even if the conduct meets the new felony, it can still sentence it as a misdemeanor. The BIA erred because the only way Ms. Prado could have qualified for a misdemeanor was under the new subsection B of 11359. The key to this case is that Prop 64 is not like Prop 47 that just reduced sentences. Prop 64 rewrote all eight marijuana offenses to be new crimes. Any modified sentence flows only from the new elements of the new crime. Then I'm back to Judge Smith's question, which at bottom, as I understand it, is does the direct democracy provisions of the California Constitution that allow voters to put measures on the ballot, can a successful measure affect immigration policy? For purposes, California law treats voter initiatives as if they were legislation. I understand that, and you can even amend the Constitution. The question is, could a successful ballot proposition in California tell the United States Immigration Service how to treat a prior conviction? Yes, Your Honor. Pickering focuses on a state court's rationale for vacating a conviction. And under Pickering, immigration courts must recognize California's policy decision that their former marijuana laws were fundamentally unfair. Prop 64 set up an entire administrative scheme to facilitate the lawful possession and sale of marijuana. This is significant. California determined that past criminal conduct will no longer be a felony, and with a license, can now even be legal. Well, let me ask you this. I was involved in some cases here involving medical marijuana, and the people didn't conform exactly. They had a problem. We also have Schedule C, which has not been changed in the United States Code. If you're a bank and you take money from a marijuana distributor, you've got a problem, and the people that put it in there have a problem because it may be money laundering. So I'm challenged. I'm struggling with the same issue, I think, that my colleague is. What you seem to be saying is that the people of the state of California have the right to, in effect, change federal immigration law by a change in their state law. Your Honor. Is that what you're saying? Well, Your Honor, the state law, the voters of California dictate what Ms. Prado's conviction was. Well, they dictate it after the fact, but she was convicted under an earlier law, and that law under federal previous law found that she qualified to be removed based upon that conviction. You're saying, well, it's reclassified. Well, fine, but the underlying conviction, as we've stipulated in our discussion, was not tainted by anything, any problem, racism, whatever. All that happened was that the state changed the punishment. So both my colleague and I, and perhaps Judge Lynn as well, are struggling with the fact that you've got federal, you've got state. I just wrote an opinion yesterday about three California laws where it seems things kind of weave back and forth and some things work and some things don't. But here you're talking about a federal immigration law. I've never understood that the people of California, or indeed the people in the legislature of California, had the right to change federal law. That's the role of the Congress and the President and so on. Isn't that right? Yes, Your Honor, but her conviction changed, and that mantra requires looking at the elements of her conviction. And under Prop 64, on page 10 of the second addendum of Ms. Prado's opening brief, you'll see that the old 11359 offense was just one sentence long, had no subsection, and was only punishable as a felony. Are you saying then that if under the old law, say there was a whatever it was, say there were five elements to it and she was convicted under that old law with the five elements and there was a jury and everything was fine, there was no problem with racism or whatever, and the state of California changes the law to make it a nine-element crime, totally different. Yes, Your Honor. You're suggesting that that fact would change altogether the way federal immigration law would have to treat her. Yes, Your Honor. If Pickering recognizes it as a substantive defect, and here it was. And I think I may have misunderstood your question earlier. The substance of this law is different because the definition of marijuana also changed. So what you're saying is that if the people of the state of California, in their wisdom, of course, conclude that marijuana is a wonderful thing, there's absolutely nothing wrong with it, and what Jeff Sessions thought about it before was crazy, that controls for purposes of federal immigration law? Is that what you're saying? Pickering says yes, Your Honor. In California courts, people V. Moore, Smit, Jones, and Johnson show that Prop 64 did create new crimes and made them retroactive. So in Prop 64 resentencing hearings, California courts freeze in time the facts underlying the original offense and then examine whether the conduct falls under the new misdemeanor subsection, 11359B, or the new felony subsection, 11359C. It is impossible for her to have a misdemeanor under the old law. Page 11 of her second addendum in the opening brief lists this new destructive offense. Subsection B is the new misdemeanor for those who possess marijuana for sale. And subsection C is the new felony applied to those who possess marijuana for sale and who have a prior disqualifying offense. And federal law in Doe v. Harris also says the new crimes, new criminal crime, new criminal law can amend previous plea agreements. Do you want to let your colleague have a little time there? I'd like to reserve it for rebuttal, please. Okay, so that's the way you're going to do it? Yes, thank you. Okay, very well. And how much time do you want to save for rebuttal? About two minutes, please. Okay, very well. The Ninth Circuit certified to the California Supreme Court the question of whether a new criminal law can amend a plea agreement. In Doe v. Harris, the California Supreme Court said yes when applying the new Megan's Law retroactively so that a registered sex offender must have his identity made public, a new law contrary to Mr. Doe's plea agreement. Doe explained that, quote, But that's state law, is it not? Doe v. Harris was a federal case, Your Honor. And the Supreme Court also cited to Doe v. Harris and recognized, quote, the California legislature's power to change the law retroactively, unquote. In Harris v. Superior Court, Prop 47 reduced a defendant's sole conviction to a misdemeanor. The prosecutor then wanted to bring back charges that he had dismissed in a negotiated plea agreement. The California Supreme Court left the old plea agreement intact, explaining that Prop 47's recall procedure did not rescind a plea agreement. It simply amends it. As applied to Ms. Prado in 2014, she was guilty of 11-359 as the state then defined the felony offense. But in 2017, Prop 64 replaced her old conviction with the new crime defined by Prop 64 without rescinding the prior plea agreement. I'd like to reiterate that the California determined that this past criminal conduct will no longer be a felony and that the license can be legal. And hickering. But bottom line is, this was changed for public policy reasons, not because there was anything wrong with the trial that your client got, right? Well, California voters decided that it never should have prosecuted marijuana laws in the way that it did for an entire generation dating back to 1975. That has to be a substantive defect. But that's public policy, is it not? But it's also a substantive defect, Your Honor. This is not an expungement that rewards reform. It remedies a broken criminal justice system. When you refer to hickering, are you referring to the BIA decision? Yes, Your Honor. And the Prop 64 is not an expungement. It doesn't reward reform. It's not like a first offender statute which stopped or tries to stop unwanted conduct. To the contrary, Prop 64 legalizes adult use of marijuana, and with a license promotes the sale of marijuana as legal and taxable income for the state. Under Reyes-Torres, the government has to prove that Prop 64 served only rehabilitative purposes. The government cannot meet its burden because even though Prop 64 What? Excuse me. What? Who requires that? Reyes-Torres. And what is that? It's a Ninth Circuit case. It was cited in our reply brief at 13, the citation 645F3D. So if the United States attorney for the Northern District of California decided to prosecute a person today for possessing marijuana, that person, we would have to dismiss the criminal proceeding because of Prop 64? No, Your Honor. But a conviction today under state law would be overbroad to the federal definition. But Prop 64 would have nothing to do with the decision of federal authorities to pursue criminal sanctions for marijuana possession today. Correct? For federal purposes, yes, Your Honor. But Moncrief requires looking at the state conviction. Got you. Thank you. All right. Thank you. Hello. Good morning. May it please the Court, I'm Genevieve Kelly representing the United States. Your Honors, the issue in this case is whether the passage of California's Prop 64 changed the immigration consequences of Ms. Prado's 2014 conviction. It did not. The Board properly analyzed Ms. Prado's conviction under the Roman Suase precedent because Ms. Prado is a nonresident who under 1227A2 was convicted at any time after admission of an aggravated felony and a controlled substance offense. The definition of conviction under the immigration statutes is backwards looking, as this Court has recognized time and time again. It refers to the elements that a jury must have necessarily found prior to the conviction or that the defendant must have necessarily pleaded to. In this way, the immigration consequences result only from actions that were proven to have been committed beyond a reasonable doubt and only from actions that the noncitizen knew or should have known had criminal and immigration consequences. Here Ms. Prado argues for a new rule that the backwards looking definition of conviction, such as hers. The problem with that rule is that with this new carve out that Ms. Prado is arguing for, it would result in individuals who have been wholly expunged by a state having sterner immigration consequences than an individual whose state conviction was merely reclassified. It would go back to the original problem that this Court recognized years ago, which is that applying the definition in that way would unfairly and differently apply the word conviction to different state schemes around the country. Ms. Prado also argues that Prop 64 is not merely rehabilitative. However, as the Board and this Court have recognized, rehabilitative actions are post-conviction events. And the distinction is between State action that occurs after the fact and action that occurred prior to conviction that is newly discovered, such as some bias or some problem with the underlying conviction. Sotomayor, I think counsel is arguing that we should essentially, although there's nothing directly argued defective about the original conviction, that we should look at the policy issues behind the proposition and apply that as if there were an unfairness in the underlying proceeding. I believe that is the argument, Your Honor, and that would result in the same problem that the Court has analyzed before, which is that States are going to have different schemes for expungements or for reclassifications, whereas in the immigration law, the point is not just that the Federal statute does create some deference to the State statutes by defining conviction. There has to be the categorical match with the State statute, and yet the nonresident, him or herself, must also defer to the State statute of conviction at the time the action is committed. And that's why the conviction is backwards looking. Also, Ms. Prado's argument is also belied by the text of Prop 64, which states its purpose, which is really a public policy general purpose that applies to everyone. There's an assumption in that proposition that everyone will get relief. And all she had to do, she didn't have to have a hearing on the facts of her prior conviction, she just had to submit her application to the State judge. So, for these reasons, we believe the Court should uphold the Board's decision. Any other questions? Thank you. Thank you. So, you have some rebuttal time, and your colleague was enthusiastic and used up all your time, but we're going to give you some time. So, what do you say? We'll give you five minutes. How about that? Will that be enough? Good BC5, right? Yes, Your Honor. Okay. I have three points to make, Your Honor. First, I'd like to make a quick correction. Doe v. Harris is actually a State case. However, it's a certified, it resulted from a certified question from this Court. It was later recognized by a Supreme Court case in Direct TV. Second? I wonder where that case came from. Yes, Your Honor. Second, Prop 47, which is a case somewhere that's been, or a statute that's been similarly referenced, reduced sentences to get people out of prisons. Felonies were reduced to misdemeanors. Prop 64 also reduced sentences, but Prop 64 did so much more. It changed the crime itself because the underlying conduct is no longer illegal. Prop 47 did not say that petty ---- The key word, isn't it, no longer? Sorry, what was the question, Your Honor? That's the key word, isn't it, no longer? Correct, Your Honor. Because Prop 47 did not say that petty theft is a good thing, but Prop 64 does say that selling marijuana, selling and using marijuana with a license is. That it's a good thing or it's not a bad thing? It's just saying it's a legal thing, Your Honor. Okay. I think, I don't, maybe that's changed as of this morning, who knows. But I don't think at this point that California is actually saying you must have marijuana because it's so good for you. I don't believe it's saying that either. All that matters is it's saying it's a legal thing to engage in. Okay, all right. And third, under Pickering, immigration courts must recognize California's policy decision that their former laws were fundamentally unfair. But why? I think all of us have wrestled with this. Obviously, you all are very smart people. But we do have two systems. We have a federal system and we have a state system. And immigration law is wholly controlled in terms of the immigration itself by federal law. You have a backward-looking system. Somebody has been convicted of something. We have case law that says that that, in this particular case, is an aggravated felony, which is a defined term under federal immigration law. There's nothing that I'm aware of in this conviction in terms of the elements proven or pled that has changed. All that has changed is the state of California, in its wisdom, has concluded as a matter of public policy that it's going to punish things differently. But that's the state system. Why should the state of California, or any state, have the ability to change federal immigration law based upon its public policy decision? Yes, sir. So there's two parts to that question. First, the reason this underlying conviction has changed to no longer be similar to the federal definition is that California actually changed the definition of marijuana itself. It now regulates, under the same statute, more substances than the federal definition. And then second, Pickering says that we must look to the state court's decisions. Remember, Pickering does nothing to us. That's a BIA decision. That doesn't control us at all. It doesn't control the district courts. So let's forget about Pickering. Let's talk about what controls us. In that case, Your Honor, Reyes-Torres, which was a Ninth Circuit decision, also said that this court should look to California's policy decisions for vacating these convictions. And even if you — The Proposition 64 convictions? It was not a Proposition 64 conviction, Reyes-Torres, but it was a case determining whether or not post-conviction relief should be given full faith and credit for immigration purposes. And even if you disagree with our exact reasoning or exact proposals for why post-conviction relief was given, under Reyes-Torres and NAAF, which is another Ninth Circuit decision, the government must prove with clear, unequivocal, and convincing evidence that post-conviction relief was given solely for immigration or immigration hardship or rehabilitation. If the state does that. In other words, if the state's done this for the sole purpose of influencing federal law. Is that what you're saying? The sole purpose — So the government has the burden to prove that the sole purpose is either to relieve immigration hardship or to give rehabilitation. What government? The opposing counsel, Your Honor. So you're saying that even though Ms. Prado was convicted, that under previous federal law she clearly had no rights that you're now claiming, and that because the state made the change, the government, the federal government, has the burden to show that she doesn't get relief? How does that work? Correct, Your Honor. So the way it works is Ms. Prado was originally convicted in 2014. Right. And that conviction would have served, and she would have been an aggravated felony. However, what happened is California fundamentally changed what her conviction is. When she — For purposes of state law. For purposes — yes, Your Honor. But through that process, they also changed the actual crime itself that she was convicted of. And because of that change, it is now overbroad to the federal definition of marijuana, and the government has to prove that her conviction was not — she was not given post-conviction relief solely for the purpose of relieving her immigration consequences. Okay. We'll let you have your five and a half minutes now. Either of my colleagues have additional questions? No. We thank everyone. We especially thank you fine young lawyers. You're going to be great. We think you did a great job. So we congratulate you on that. Thank you for your service. And, of course, we thank the government as well. So the case just argued is submitted. Thank you very much.
judges: Hawkins, M. Smith, Jr., Lynn